IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| KENNETH V. MCLEOD | § | |
| | § | |
| v. | § | C.A. NO. MC-08-041 |
| | § | |
| JIM ANDERSON, ET AL. | § | |

## MEMORANDUM AND RECOMMENDATION ADDRESSING PLAINTIFF'S MOTION TO PROCEED *IN FORMA PAUPERIS*

On April 29, 2008, plaintiff filed an application to proceed in forma pauperis and a civil rights complaint. (D.E. 1). Plaintiff wrote the complaint on a form for employment discrimination claims. However, it named only Aransas County officials as defendants, and did not allege that plaintiff was a county employee. Moreover, it alleged that plaintiff had been illegally incarcerated for 742 days, and that defendants had discriminated against him "by making separate [sic] case of each bad check," by imposing excessive fines, and by threatening to kill him during his time in jail. Id. at 2.

On May 8, 2008, a hearing was held to evaluate plaintiff's eligibility to proceed without prepayment of fees, and to determine the nature of his claims. See (D.E. 2). For the following reasons, it is respectfully recommended that plaintiff's motion to proceed in forma pauperis be denied. It is further respectfully recommended that certain claims be dismissed as meritless.

## I.  FACTUAL ALLEGATIONS AND BACKGROUND

Plaintiff seeks to sue four named Aransas County officials: Aransas County Attorney Jim Anderson, Aransas County Court at Law Judge William Adams, Aransas County Judge C.H. Mills, and Aransas County Sheriff Mark Gilliam.  He also brings claims against two unnamed Aransas County Jail employees.  Finally, he seeks to sue Dr. Hurst, a physician at the Aransas County Jail.

## A.     Plaintiff's Motion to Proceed In Forma Pauperis.

Plaintiff's monthly income consists of a $650 social security payment[1] and approximately $320 he makes collecting and recycling cans.  His monthly expenses are approximately $550.  He spends around $200 on groceries, $160 on transportation, $75 on electricity, $70 on water, $50 on gas, $50 on medical expenses, and $7 on telephone service.  He has no dependents.

Plaintiff owns and lives on a half-acre tract in Fulton, Texas.  The land is worth approximately $30,000, exclusive of the mobile home in which plaintiff lives.  This tract is subject to a tax lien of approximately $1,700.  He is the sole owner of KB Corporation, which constructs houses and roads.  Until four years ago, the company usually earned profits of approximately $500,000 per year, and plaintiff took a salary of approximately $52,000 per year.  The company has had no

---

[1] This figure reflects deductions for Medicare and Medicaid.

revenue for the past four years; however, plaintiff owns approximately fifty-six acres of land, worth approximately $950,000, on which he plans to build houses. This land is subject to a tax lien of approximately $45,000.

**B.      Plaintiff's Civil Rights Claims.**

The following facts were alleged in the complaint, or at the hearing.  During November and December 2004, plaintiff wrote fifty-two bad checks.  (D.E. 1, at 3, 5-9).  He pleaded guilty to several counts of issuing a bad check, and was sentenced to a nine-year period of incarceration, and a fine of approximately $41,000 dollars by Aransas County Court at Law Judge William Adams. According to plaintiff, although Judge Adams' normal practice is to consolidate all of a defendant's pending bad check charges into one criminal case, he made an individual case out of each of his charges.[2]  He further alleges that he was charged for court costs on each charge, even though he only appeared in court once.

At sentencing, plaintiff alleges that Judge Adams informed him that he would try him on the remaining charges and incarcerate him for another nine years upon his release.[3]  He did not appeal his conviction because his appointed attorney

---

[2] Plaintiff alleges that an attorney told him that proceeding this way would artificially inflate the criminal caseload, thereby allowing the county to create another judicial position.

[3] Plaintiff has apparently not been fined for the bad checks written in December 2004. See (D.E. 1, at 9, 19).

incorrectly represented that the remaining charges had been dismissed pursuant to a plea agreement.  Moreover, he was unable to procure state habeas counsel because each of the seven attorneys he allegedly contacted had been warned that Judge Adams would not appoint them to represent criminal defendants in the future if they represented plaintiff.  He then completed a state habeas application by himself, but never filed it because his jailors would not allow him to mail it.

Plaintiff began serving his sentence around June 2005, after Brownsville police apprehended him.  He was transferred to the Aransas County Jail around September 2005.

In October 2005, plaintiff requested antibiotics for a bone infection in his left foot from Dr. Hurst, who provided care to inmates in Aransas County Jail until retiring in 2006.  Dr. Hurst claimed that local jail policy did not allow such treatment unless a prisoner's life was at stake.

Plaintiff suffered a heart attack in early 2006.  After he was released from the hospital in March 2006, jail staff told him that he did not need to return to jail, so he went home.  The day after his release, his foot became swollen, and had to be amputated early the next morning.  Plaintiff alleges that the amputation was caused by Dr. Hurst's failure to treat him.

In July 2006, plaintiff received notice that Bracht Lumber Company had

filed a petition to withdraw the excess proceeds from a tax sale of his property. The petition was set for hearing on July 27, 2006.[4]  However, when he came to the courthouse to attend the hearing, a bailiff told him that "Judge Adams does not want you in this courthouse," and refused to let him enter.  As a result, Bracht Lumber Company obtained a default judgment against him, which included exemplary damages and attorney's fees.  (D.E. 1, at 10).

Soon thereafter, he returned to the Aransas County Courthouse to check the status of some real property.  He encountered Judge Adams in the hall, who told a bailiff that "[w]e don't want a half-blind, one legged man in our courthouse," and ordered him to return plaintiff to jail immediately.[5]  He was re-incarcerated.

In September 2006, plaintiff sought temporary release so that he could sell some land to pay debts owed to the county in an unrelated matter.[6]  During proceedings on the issue, Judge Adams asked if the land had already been subdivided.  Over plaintiff's objections, County Attorney Anderson denied that plaintiff's land had been subdivided, or platted.  As a result, Judge Adams did not

---

[4] Bracht Lumber Company originally obtained a judgment against plaintiff on January 20, 1998.  (D.E. 1, at 17).

[5] Plaintiff alleges that Judge Adams barred him from the courthouse on two other occasions, but could not explain when or why.

[6] Plaintiff alleges that he once owned a bail bonding company, and still owed for several forfeited bonds.

grant him temporary release.  However, plaintiff asserts that approximately four

years earlier, County Attorney Anderson had sent county engineers to survey his

land, which he had then personally platted.

Around November 2007, plaintiff was hospitalized for an unspecified

ailment.  Upon his release, Sergeant Olson and an unnamed jailor picked him up

from the hospital.  The unnamed jailor told Sergeant Olson to "let me have him, he

won't give you any more trouble.  He's going to have a heart attack tonight.  We'll

put a sack over his head, and he'll have a heart attack, and you won't have any

more trouble with him."  Sergeant Olson responded that he did not operate that

way.  After they arrived at the cell, the jailor asked Sergeant Olson to "at least take

his wheelchair away from him and make him crawl around on the floor like the dog

that he is."  Sergeant Olson again explained that this was impermissible.  The

officer never physically harmed plaintiff, and he was not harassed at any time

afterwards.  Plaintiff informed Sheriff Gilliam of the incident in a letter, but

received no response.

Plaintiff was released from Aransas County Jail on or about April 24, 2008,

when Judge Adams came to the jail and explained to him that he had

misunderstood the law, and plaintiff should only have been incarcerated for 90

days.

Plaintiff seeks to recover $100 million dollars in actual damages, including punishment wrongfully imposed pursuant to his criminal proceedings and default judgment, pain and suffering, and the loss of his leg.

## II.  DISCUSSION

### A.    Actions Filed In Forma Pauperis Must Satisfy 28 U.S.C. § 1915(e)(2)(B).

Plaintiff filed an application with the Court to proceed in forma pauperis, which would allow him to file his action without paying the filing fees:

> any court of the United States may authorize the commencement, prosecution, or defense of any suit, action, or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such [person] possesses that the person is unable to pay such fees or give security therefor.

28 U.S.C. § 1915(a)(1); see also Gay v. Tex. Dep't of Corr., 117 F.3d 240, 241 (5th Cir. 1997) (non-prisoner plaintiffs may file actions without paying a filing fee).  Even if a person is indigent, however, that person may be limited in proceeding in forma pauperis.  The statute further provides that:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that–
> * * *
>            (B) the action or appeal–
>                 (i) is frivolous or malicious;
>                 (ii) fails to state a claim on which
>                 relief may be granted; or

(iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2); see also Siglar v. Hightower, 112 F.3d 191, 193 (stating that a complaint may be dismissed if it lacks an arguable basis in law or fact).

It is well established that "[t]o state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted); see also Biliski v. Harborth, 55 F.3d 160, 162 (5th Cir. 1995) (per curiam). Plaintiff's pro se complaint is to be construed liberally, and its well-pleaded allegations accepted as true. Johnson v. Atkins, 999 F.2d 99, 100 (5th Cir. 1993) (per curiam) (citation omitted). "Even a liberally construed pro se civil rights complaint, however, must set forth facts giving rise to a claim on which relief may be granted." Id. (citing Levitt v. Univ. of Tex. at El Paso, 847 F.2d 221, 224 (5th Cir. 1988)). In Siglar, the court explained that "[a] complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." 112 F.3d at 193 (citing Neitzke v. Williams, 490 U.S. 319, 327 (1989)). The Fifth Circuit has also held that "[a] district court may dismiss an in forma

pauperis proceeding as frivolous ... whenever it appears that the claim's realistic chance of ultimate success is slight or the claim has no arguable basis in law or fact."  Henson-El v. Rogers, 923 F.2d 51, 53 (5th Cir. 1991) (per curiam) (citations omitted); see also Booker v. Koonce, 2 F.3d 114, 116 (5th Cir. 1993) (dismissing an arrestee's in forma pauperis civil rights claims against district attorney and city as facially frivolous).

At the hearing, plaintiff provided testimony that established his monthly income exceeded his monthly expenses by about $400.00.  More importantly, he testified about non-homestead property that he owned with a value of nearly one million dollars.  Accordingly, it is respectfully recommended that his motion to proceed in forma pauperis be denied.  It is further respectfully recommended that plaintiff be ordered to pay the civil filing fee in full within thirty days.

**B.     Plaintiff's Claims.**

Plaintiff's pro se complaint must be read indulgently.  See Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam).  His allegations must be accepted as true, unless they are clearly irrational or wholly incredible.  Denton v. Hernandez, 504 U.S. 25, 32-33 (1992).

1.     **Aransas County Attorney Jim Anderson.**

   a.     **Claims against Mr. Anderson relating to civil proceedings.**

Plaintiff claims that Mr. Anderson treated him differently than other

contractors.  Plaintiff asserts that he obtained permission from his precinct's

county commissioner to install sewer lines sometime before his incarceration.

Plaintiff alleges that County Attorney Anderson subsequently prevented him

from digging because he did not obtain permission from the entire commission.

He asserts that no other contractor had ever been required to do so.  Although he

claims this was discriminatory, plaintiff denied that the discrimination was based

on race, gender, religion, ethnic origin, or any other protected class.  Instead, he

alleges merely that Mr. Anderson treated him differently than other contractors.

Plaintiff must therefore show that "the difference in treatment with others

similarly situated was irrational."  Mikeska v. City of Galveston, 451 F.3d 376, 381

(5th Cir. 2006) (citing Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)).

To prevail, plaintiff must "carry the heavy burden of 'negativ[ing] any reasonably

convceivable set of facts that could provide a rational basis' for their differential

treatment."  Lindquist v. City of Pasadena, Tex., __ F.3d __, 2008 WL 1726173, at

*3 (5th Cir. Apr. 15, 2008) (citation omitted).  Plaintiff has failed to allege facts

from which irrationality could plausibly be inferred.

Moreover, to the extent that he seeks recovery for Mr. Anderson's statement that his land had not been subdivided, "[w]itnesses ... are absolutely immune from liability for their testimony in judicial proceedings." Johnson v. Kegans, 870 F.2d 992, 996 (5th Cir. 1989) (citation omitted); see also Briscoe v. LaHue, 460 U.S. 325, 343 (1983) ("subjecting government officials ... to damages liability under § 1983 for their testimony might undermine not only their contribution to the judicial process but also the effective performance of their other public duties"). It is therefore respectfully recommended that plaintiff's claims related to the subdivision of his property, and to Mr. Anderson's testimony, are without merit.

Plaintiff also complains that Mr. Anderson filed a lis pendens action against his real property. However, he admits that he owes several years of back taxes on all of his property, and offers no explanation as to why the lis pendens violates any constitutional right. Mr. Anderson's litigation of the county's tax claim affords him immunity. See Johnson, 870 F.2d at 996. Accordingly, it is respectfully recommended that plaintiff's claims against Mr. Anderson be dismissed as meritless.

### b.    Claims against Mr. Anderson relating to criminal proceedings.

Plaintiff alleges that his rights were violated when each bad check was treated as a separate case. To the extent that he seeks to proceed against Mr.

Anderson, prosecutorial immunity protects him from his conduct in "initiating a prosecution and in presenting the State's case."  Cousin v. Small, 325 F.3d 627, 631 (5th Cir. 2003) (per curiam) (quoting Burns v. Reed, 500 U.S. 478, 486 (1991)); see also Kerr v. Lyford, 171 F.3d 330, 337 (5th Cir. 1999) (immunity appropriate where act is one in which a prosecutor is generally authorized to engage).  Thus, it is respectfully recommended that this claim is without merit.

### 2.   Aransas County Court at Law Judge William Adams.

Plaintiff is suing Judge Adams for imprisoning him without authority, for imposing excessive fines, for barring him from the Aransas County Courthouse, and for insulting him when ordering him to return to jail.

### a.   Plaintiff fails to state a claim regarding Judge Adams' sentencing and imprisonment.

The Supreme Court has established that "generally, a judge is immune from a suit for money damages."  Mireles v. Waco, 502 U.S. 9, 9 (1991) (per curiam) (citations omitted).  Judicial immunity serves to safeguard "'a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'"  Id. at 10 (quoting Bradley v. Fisher, 80 U.S. 335, 347 (1871)).  Judicial immunity is overcome only when the acts were "not taken in the judge's judicial capacity," or

when they were "taken in the complete absence of all jurisdiction." Id. at 11-12 (citations omitted).

The Fifth Circuit has explained that "[j]udicial officers are entitled to absolute immunity from claims for damages arising out of acts performed in the exercise of their judicial functions." Boyd v. Biggers 31 F.3d 279, 284 (5th Cir. 1995) (per curiam); see also Bauer v. Texas, 341 F.3d 352, 357 (5th Cir. 2003) ("Judges enjoy absolute immunity from liability for judicial or adjudicatory acts.") (citing Forrester v. White, 484 U.S. 219 (1988)).  "A judge's acts are judicial in nature if they are 'normally performed by a judge' and the parties affected 'dealt with the judge in his judicial capacity.'" Boyd, 31 F.3d at 285 (quoting Mireles, 502 U.S. at 12).  In determining whether an act was judicial in nature, courts should consider four factors:

> (1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity.

Ballard v. Wall, 413 F.3d 510, 515 (5th Cir. 2005) (quoting Malina v. Gonzales, 994 F.2d 1121, 1124 (5th Cir. 1993)).

Judge Adams imposed sentence on plaintiff after he pleaded guilty to writing

bad checks.  Criminal sentencing is a judicial function.  <u>Malina</u>, 994 F.2d at 1124 (citation omitted).  Furthermore, the Aransas County Court at Law had jurisdiction over plaintiff's criminal case.  <u>See</u> Tex. Gov't Code §§ 25.0003 (jurisdiction), 25.0062 (Aransas County Court at Law provisions), 26.045 (original criminal jurisdiction); Tex. Penal Code § 32.41 (issuance of a bad check).  Even if the sentence imposed was in excess of that allowed by law, the error was not made "in the complete absence of all jurisdiction."  <u>Mireles</u>, 502 U.S. at 12 (citations omitted); <u>accord</u> <u>Mays v. Sudderth</u>, 97 F.3d 107, 111 (5th Cir. 1996) ("'A judge will not be deprived of immunity because the action he took was in error..., or in excess of his authority...'") (quoting <u>Stump v. Sparkman</u>, 435 U.S. 349, 356-57 (1978)).  Thus, it is respectfully recommended that Judge Adams is immune to suit for any erroneous sentence calculation.

Plaintiff also claims his rights were violated when "Judge Adams made an individual case out of each check" for the purposes of imposing punishment.  Again, this was a judicial function, and the decision was not made in the complete absence of jurisdiction.  Accordingly, it is respectfully recommended that plaintiff's excessive punishment claims against Judge Adams are barred by judicial immunity.

### b.    Plaintiff's due process claim should be allowed to proceed.

Plaintiff also alleges that Judge Adams was directly involved in denying him the right to attend a tax hearing.  If true, this could violate his due process rights. See Gerhart v. Hayes, 201 F.3d 646, 649 (5th Cir. 2000) ("due process requires notice and an opportunity to respond") (citation omitted) (emphasis added); Crowe v. Smith, 151 F.3d 217, 230-31 (5th Cir. 1998) ("[t]he fundamental requirement of due process is the opportunity to be heard") (citation omitted); see also Shelley v. Kraemer, 334 U.S. 1, 16 (1948) ("The action of state courts in imposing penalties or depriving parties of other substantive rights without providing adequate notice and opportunity to defend has ... long been regarded as a denial of the due process of law guaranteed by the Fourteenth Amendment.").

Applying the four factors enunciated in Ballard by the Fifth Circuit, it is respectfully recommended that barring plaintiff from the Aransas County Courthouse was not a judicial act.  See 413 F.3d at 515.  While a judge may undoubtedly use his contempt power to bar a litigant from his courtroom, such power does not extend to proceedings by another judge.  Thus, the act complained of is not a normal judicial function.  Although the act did occur in the Courthouse, it did not arise from a case pending before the court, or from a visit to the judge in his official capacity.  See Harper v. Merckle, 638 F.2d 848, 859 (5th Cir. Unit B

Mar. 1981) ("when it is beyond reasonable dispute that a judge has acted out of personal motivation ... and it further appears certain that no party has invoked the judicial machinery for any purpose at all, then the judge's actions do not amount to 'judicial acts'"). Accordingly, it is respectfully recommended that Judge Adams is not entitled to judicial immunity for barring plaintiff from the Aransas County Courthouse, and that this claim be retained on the Court's docket after payment of the civil filing fee.

### c.     Plaintiff's disability discrimination claims should be allowed to proceed.

Plaintiff alleges that Judge Adams ordered courthouse staff to deny him access on several other occasions as well. According to plaintiff, Judge Adams once stated that he did so because plaintiff was a "half blind, one legged man."[7] This statement indicates an intent to discriminate on the basis of plaintiff's disabilities.

"The [Americans with Disabilities Act] is a federal anti-discrimination statute designed '[t]o provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.'" Delano-Pyle v. Victoria County, Tex., 302 F.3d 567, 574 (5th Cir. 2002) (quoting Rizzo v.

---

[7] Because verbal abuse, no matter how extreme, is not actionable under § 1983, plaintiff cannot proceed under that statute. See Brender v. Brumley, 1 F.3d 271, 274 n.4 (5th Cir. 1993).

16

Children's World Learning Ctrs., Inc., 173 F.3d 254, 261 (5th Cir. 1999)).  The

Act provides that "no qualified individual with a disability shall, by reason of such

disability, be excluded from participation in or be denied the benefits of the

services, programs, or activities of a public entity, or be subjected to discrimination

by any such entity."[8]  42 U.S.C. § 12132.  The Fifth Circuit has explained that

> To establish a prima facie case of discrimination under
> the ADA, a plaintiff must demonstrate: (1) that he is a
> qualified individual [with a disability] within the
> meaning of the ADA; (2) that he is being excluded from
> participation in, or being denied benefits of, services,
> programs, or activities for which the public entity is
> responsible, or is otherwise being discriminated against
> by the public entity, and (3) that such exclusion, denial of
> benefits, or discrimination is by reason of his disability.

Melton v. Dallas Area Rapid Transit, 391 F.3d 669, 671-72 (5th Cir. 2004) (citing

Lightbourn v. County of El Paso, Tex., 118 F.3d 421, 428 (5th Cir. 1997)).

An individual has a disability under the ADA if he has an impairment that

substantially limits a major life activity, has a record of such a disability, or is

regarded as having one.  42 U.S.C. § 12102(2); see also E.E.O.C. v. E.I. Du Pont

de Nemours & Co., 480 F.3d 724, 729 (5th Cir. 2007) (citations omitted); Waldrip

---

[8] Disability discrimination by recipients of federal funds is also prohibited by the
Rehabilitation Act of 1973.  The Fifth Circuit has explained that "because the rights and
remedies under [the ADA and the Rehabilitation Act] are the same, case law interpreting one
statute can be applied to the other."  Pace v. Bogalusa City Sch. Bd., 403 F.3d 272, 287-288 (5th
Cir. 2005) (en banc).  Plaintiff may therefore be able to proceed under the Rehabilitation Act as
well if he can show the necessary federal funding.

v. General Elec. Co., 325 F.3d 652, 654 (5th Cir. 2003) (citations omitted).  An

impairment is substantially limiting if it renders the individual "'[u]nable to

perform a major life activity that the average person in the population can

perform.'"  E.I. Du Pont de Nemours & Co., 480 F.3d at 730 (quoting 29 C.F.R.

§ 1630.2(j)(1)(i)).  Walking and seeing are major life activities.  Talk v. Delta

Airlines, Inc., 165 F.3d 1021, 1024-25 (5th Cir. 1999) (per curiam) (quoting 29

C.F.R. § 1630.2(i)).  Plaintiff alleged that he was unable to walk without a

wheelchair.  Judge Adams' statements indicate that he regarded him as

substantially limited in seeing.  His statements also strongly suggest that plaintiff's

disabilities were the reason he prevented his access to the courthouse.  Thus, he has

sufficiently alleged disability and discriminatory intent.

Regulations define "public entity" as including any state or local

government, as well as their departments, agencies, and instrumentalities.  28

C.F.R. § 35.104.  No mandatory precedent holds that a county judge is a public

entity when he personally discriminates against an individual by ordering him

barred from a courthouse.  However, the Supreme Court recently observed that the

ADA, unlike the Age Discrimination in Employment Act, does not contain a

statutory provision exempting appointed state judges from liability.  Pennsylvania

Dep't of Corr. v. Yeskey, 524 U.S. 206, 209 (1998) (holding that ADA applies to

state prisons).  Moreover, the Eleventh Circuit has suggested that a person acting "under color of state law" is a public entity for the purposes of the ADA.  See Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1289, 1292-93 (11th Cir. 2005) (per curiam).  Action is taken under color of state law when it is possible "only because the wrongdoer is clothed with the authority of state law."  Townsend v. Moya, 291 F.3d 859, 861 (5th Cir. 2002) (per curiam) (citation omitted).

Judge Adams acted under color of state law because he could not have ordered plaintiff barred if he had not been a state official.  He denied plaintiff access to the recordkeeping services offered at the courthouse.  Accordingly, it is respectfully recommended that plaintiff has alleged a prima facie case of discrimination under the ADA, and that this claim be retained on the Court's docket after the civil filing fee is paid.

### 3.    Aransas County Judge C.H. Mills.

At the hearing, plaintiff admitted having no claim against Judge Mills personally, or in his capacity as county executive.  Indeed, plaintiff claimed that Judge Mills had been elected only several months previously.  He named Judge Mills as a defendant because of his supervisory status.

Section 1983 does not create supervisory, or respondeat superior liability.  Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002).  Only the direct acts or

omissions of government officials, not the acts of subordinates, will give rise to individual liability under § 1983.  Id. at 742 n.6 (citing Alton v. Tex. A&M Univ., 168 F.3d 196, 200 (5th Cir. 1999)).  Supervisory officials may be held liable only if they (1) affirmatively participate in acts that cause the constitutional deprivation or (2) implement unconstitutional policies that causally result in plaintiff's injury. Oliver, 276 F.3d at 742; Thompkins v. Belt, 828 F.2d 298, 303-04 (5th Cir. 1997).

Plaintiff admits that Judge Mills was not personally involved in any of the events underlying his claims, and does not suggest he enacted unconstitutional policies or procedures.  Accordingly, it is respectfully recommended that Judge Mills be dismissed as a defendant in this suit.

### 4.    Sheriff Mark Gilliam.

At the hearing, plaintiff admitted having no claim against Sheriff Mark Gilliam personally.  He admits that he was not personally involved in any of the events underlying his claims, and does not suggest he enacted unconstitutional policies or procedures.  Accordingly, it is respectfully recommended that Sheriff Mark Gilliam be dismissed as a defendant in this suit.

5.      **Sheriff Gilliam's Staff.**

      a.      **Unnamed officer who made threats.**

Plaintiff alleges that an unnamed member of Sheriff Gilliam's staff told

Sergeant Olson to "let me have [plaintiff]," so he could cause him to have a heart

attack.  He further alleges that the same officer asked Sergeant Olson to let him

take plaintiff's wheelchair from him, so that he would have to "crawl around like

the dog he is."  However, the officer never took any action against plaintiff, nor did

he threaten him again.

The Fifth Circuit has explained that verbal abuse by a corrections officer, no

matter how threatening or antagonistic, is not an injury of constitutional

dimensions.  See Siglar, 112 F.3d at 193 (citation omitted); McFadden v. Lucas,

713 F.2d 143, 146 (5th Cir. 1983) (citations omitted).  Accordingly, it is

respectfully recommended that plaintiff has failed to state a claim against this

unnamed officer.

      b.      **Unnamed officer who denied access to courts.**

Plaintiff also claims that unspecified jail staff would not let him file his

completed state habeas application, and that he was denied access to writing

materials for a period after he tried to do so.

Prisoners have a constitutionally protected right of access to the courts.  See

Lewis v. Casey, 518 U.S. 343, 350 (1996) (citing Bounds v. Smith, 430 U.S. 817 (1977)).  The State must furnish indigent inmates with pen and paper to draft legal documents, stamps to mail them, and adequate opportunity to conduct legal research through access to adequate law libraries or access to "persons trained in the law" or other persons who can provide legal assistance.  Bounds, 430 U.S. at 824-28.  However, prison officials have considerable discretion in providing legal resources to prisoners.  Lewis, 518 U.S. at 356.  The right does not guarantee any "particular methodology but rather the conferral of a capability – the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts."  Id.; see also Jones v. Greninger, 188 F.3d 322, 325 (5th Cir. 1999) (per curiam) (citations omitted) (the right provides a reasonable opportunity to file nonfrivolous legal claims challenging convictions or conditions of confinement).

Because the right of access is not a "freestanding right," the plaintiff must demonstrate actual injury resulting from an alleged denial of access to the courts.  Lewis, 518 U.S. 351; Chriceol v. Phillips, 169 F.3d 313, 317 (5th Cir. 1999) (per curiam).  Without a showing of an actual injury, a plaintiff lacks standing to pursue a claim of denial of access to the courts.  Lewis, 518 U.S. at 349.  To establish the requisite actual injury, plaintiff must show that he lost an actionable constitutional claim or was prevented from presenting such a claim because of the alleged denial.

22

See Lewis, 518 U.S. at 356; Morrow v. Harwell, 768 F.2d 619, 623 (5th Cir. 1985) (right extends to habeas petitions); see also Christopher v. Harbury, 536 U.S. 403, 415 (2002).

Plaintiff alleges that Aransas County Jail officials prevented him from filing a state habeas application challenging his conviction.  He has further alleged that, at the original trial, counsel misrepresented the substance of the agreement pursuant to which he was sentenced.  Thus, he may have been denied an opportunity to present an actionable claim of ineffective assistance of counsel. See Bond v. Dretke, 384 F.3d 166, 167-68 (5th Cir. 2004) (per curiam) (citations omitted).  Accordingly, it is respectfully recommended that plaintiff has sufficiently alleged that his right to access the courts was denied, and that this claim be retained on the Court's docket after the civil filing fee is paid.

### 6.      Aransas County Jail Doctor Hurst.

Plaintiff is suing Dr. Hurst for causing the amputation of his left foot by failing to treat him.

The Court must "apply the forum state's statute of limitations" in § 1983 actions.  Stanley v. Foster, 464 F.3d 565, 568 (5th Cir. 2006).  Federal civil rights actions instituted in Texas, such as those brought pursuant to § 1983, are deemed analogous to personal injury claims, and, therefore, the applicable limitations

period is the two years fixed by § 16.003(a) of the Texas Civil Practice and

Remedies Code.  Id.  "Accrual of a § 1983 claim is governed by federal law,"

however.  Piotrowski v. City of Houston, 237 F.3d 567, 576 (5th Cir. 2001).  A

cause of action accrues when the plaintiff knows, or has reason to know, of the

injury which is the basis of the action.  Gonzales v. Wyatt, 157 F.3d 1016, 1020

(5th Cir. 1998) (citation omitted).  The district court may raise the defense of

limitations *sua sponte*, and dismissal is appropriate if it is clear from plaintiff's

allegations that the claims asserted are barred by the applicable statute of

limitations.  Harris v. Hegmann, 198 F.3d 153, 156 (5th Cir. 1999) (per curiam)

(citations omitted).

Plaintiff's foot began to swell upon his release from jail in March 2006.  His

foot was amputated shortly thereafter, also in March 2006.  Accrual of any § 1983

action concerning Dr. Hurst's treatment of plaintiff thus occurred no later than

March 2006.  However, he filed this action over two years after the accrual date, on

April 29, 2008.  Accordingly, it is respectfully recommended that plaintiff's claim

against Dr. Hurst is barred by the applicable statute of limitations.

## C.     Plaintiff Cannot Recover Damages For Unlawful Imprisonment Until His Conviction Is Overturned.

Plaintiff is also seeking damages for his allegedly unlawful incarceration.

However, were the Court to award him damages on this claim, the validity of his

sentence would be implicitly questioned.  Recognizing this problem, the Supreme

Court held in <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), that "in order to recover

damages for allegedly unconstitutional conviction or imprisonment, or for other

harm caused by actions whose unlawfulness would render a conviction or sentence

invalid, a § 1983 plaintiff must prove that the conviction or sentence has been

[overturned]."  <u>Id.</u> at 486-87.  Thus, to the extent plaintiff seeks damages for

imprisonment or fines wrongfully imposed, those claims are not viable until he can

demonstrate that his sentence has been set aside as unlawful by Texas courts.  <u>See</u>

<u>id.</u> at 487 ("A claim for damages bearing that relationship to a conviction that has

*not* been so invalidated is not cognizable under § 1983.") (italics in original).

Accordingly, it is respectfully recommended that plaintiff's request for

damages related to his conviction be denied.

### III.  <u>RECOMMENDATION</u>

For the reasons stated above, it is respectfully recommended that plaintiff's

motion to proceed <u>in forma pauperis</u>, (D.E. 1), be denied.  It is further respectfully

recommended that his denial of access to the courts claims against Judge Adams,

and against unnamed staff at the Aransas County Jail, be retained, and the rest of

his claims dismissed.  Finally, it is respectfully recommended that he be ordered to

pay the civil filing fee in full within thirty (30) days, or face dismissal of these

retained claims.

Respectfully submitted this 3rd day of June 2008.

_____

BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

<u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(C); Rule 72(b) of the Federal Rules of Civil Procedure; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error*, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).